**Sterling Barnett SPANN,**
**Petitioner–Appellee,**

v.

**George N. MARTIN, III, Warden, Broad River Correctional Institution; PARKER EVATT, Commissioner, South Carolina Department of Corrections, Respondents–Appellants.**

No. 91–4007.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 30, 1991.
Decided April 30, 1992.

**664**

See also 279 S.C. 399, 308 S.E.2d 518.

Donald John Zelenka, Chief Deputy Atty. Gen., Columbia, S.C., argued, for respondents-appellants.

John Henry Blume, III, S.C. Death Penalty Resource Center, Columbia, S.C., argued (R. Mickell Branham, Franklin W. Draper, S.C. Death Penalty Resource Center, Jon Popowski, Bolt, Popowski, McCullough & Strom, on brief), for petitioner-appellee.

Before ERVIN, Chief Judge, WILKINS, Circuit Judge, and CHAPMAN, Senior Circuit Judge.

## OPINION

CHAPMAN, Senior Circuit Judge:

The issue is whether the district court abused its discretion in granting the capital habeas corpus petitioner dismissal without prejudice of his federal court action so that he might reexhaust certain state court claims, when such action had been in litigation in federal court for over five years and the execution of the state sentence has been stayed by the federal court since June 17, 1986. We hold that the district court did abuse its discretion, and we reverse and remand to the district court for a prompt consideration of the case on the merits.

### I.

In October 1981, Sterling Barnett Spann was indicted in the Court of General Sessions for York County, South Carolina on charges of criminal sexual conduct in the first degree, robbery, burglary, and murder in connection with the entry into the Clover, South Carolina home of an 82 year old widow, Mrs. Melva Harper Neil, and the robbery, criminal sexual assault, and murder of her on September 14, 1981. Two York County attorneys, James F. Fewster, Esquire and Edward M. Jackson, Esquire, were appointed to represent Spann at trial, and Spann also had the benefit of retained counsel, W. Newton Pough, Esquire, of Orangeburg, South Carolina. The trial was conducted from April 19 through April 26, 1982 and resulted in the conviction of Spann on all counts. At the sentencing hearing, the jury found beyond a reasonable doubt the existence of burglary as an aggravating circumstance to the murder and recommended that he be sentenced to death. Spann was sentenced to life imprisonment for burglary; 30 years, consecutively, for criminal sexual conduct in the first degree; ten years, consecutively, for robbery; and death by electrocution for murder.

He appealed his conviction and sentence to the South Carolina Supreme Court and was represented by David I. Bruck, Esquire, Kathy Lindsay, Esquire, and Elizabeth C. Fullwood, Esquire, experienced attorneys in handling criminal appeals.

In the opening brief to the South Carolina Supreme Court, the petitioner presented the following questions:

## I.

Did the lower court err in charging the jury that burglary required only the intent "to commit a crime therein" which when applied retroactively to this appellant's conduct, violated the prohibitions against *ex post facto* laws?

## II.

Should the resulting death penalty based upon the retroactive broadening of the elements of burglary be vacated?

## III.

Did the lower court err in disqualifying certain jurors who oppose the death penalty, but who did not make it unmistakably clear that they would automatically vote against the death penalty without regard to any of the evidence?

## IV.

Did the lower court err in allowing the Solicitor to argue during the guilt phase arguments facts and inferences not in the record which were calculated to inflame the passions of the jury?

## V.

Did the lower court err in qualifying jurors whose answers on voir dire indicate that they were predisposed to vote in favor of death?

In the reply brief, Spann's attorneys raised the following questions for review by the South Carolina Supreme Court:

I. Was Appellant entitled to a directed verdict on the charge of burglary because the state did not prove a breaking?

II. Is Appellant's death sentence unconstitutional and contrary to state law because the state did not prove the statutory aggravating circumstance of burglary?

III. Is Appellant's death sentence invalid under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution and under state law because it was imposed under the influence of passion, prejudice and other arbitrary factors when the solicitor argued to the jury during the penalty phase of trial the facts of the criminal sexual conduct, even though the state relied only upon burglary as a statutory aggravating circumstance?

IV. Did the Court deprive Appellant of due process of law by amending the indictment to conform to the decision of *State v. Brooks,* 277 S.C. 111, 283 S.E.2d 830 (1981), and by charging the jury on the elements of burglary as set forth in that opinion when this action diluted the proof necessary to prove one of the elements of burglary?

V. Did the Court preclude the jury from properly considering mitigating factors offered by Appellant in violation of his rights under the Eighth and Fourteenth Amendments to the United States Constitution by instructing the jury not to be governed by sympathy in determining its recommended sentence?

VI. Is the death penalty imposed in this case disproportionate to the penalty imposed in similar cases?

VII. Did the trial court err in permitting the state to prove the element of burglary in part through the introduction of testimony concerning the habits of the deceased?

The case was orally argued before the South Carolina Supreme Court and Spann's convictions and sentences were affirmed by published opinion, *State v. Spann,* 279 S.C. 399, 308 S.E.2d 518 (1983). The opinion of the South Carolina Supreme Court was appealed to the United States Supreme Court on February 3, 1984, and on April 23, 1984 the Supreme Court dismissed the appeal. *See Spann v. South Carolina,* 466 U.S. 947, 104 S.Ct. 2146, 80 L.Ed.2d 533 (1984).

The petitioner then began state post-conviction proceedings by filing an application for post-conviction relief on July 23, 1984, which he amended on October 11, 1984 and on December 3, 1984. In the post-conviction proceedings, petitioner was represented by Jon P. Popowski, Esquire, who is representing him in the present proceeding. He was also represented in the state post-

conviction proceedings by Richard Harpootlian, Esquire. The following allegations were made in the amended application:

## INEFFECTIVE ASSISTANCE OF COUNSEL

1. Applicant Spann has been deprived of his right to effective assistance of counsel at the *guilt phase* of his trial in violation of the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Section 14, of the South Carolina Constitution.

(a) Defense counsel failed to undertake a sufficient and independent factual investigation for the guilt portion of the trial so as to be able to present evidence to create a reasonable doubt or to effectively cross-examine the State's witnesses to create such a doubt.

2. Applicant Spann has been deprived of his right to effective assistance of counsel at the sentencing phase of his trial in violation of the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Section 14, of the South Carolina Constitution.

(a) Defense counsel failed to undertake a sufficient and independent factual investigation for the sentencing portion of the trial so as to be able to present mitigation evidence.

(b) Defense counsel failed to present mitigation evidence although there were witnesses who would have presented favorable mitigating testimony.

(c) Defense counsel failed to prepare for a sentencing trial.

(d) Defense counsel failed to prepare and/or present an effective defense to the aggravating circumstances argued by the State.

(e) Defense counsel failed to demonstrate that compared to sentences meeted [sic] out in like cases in the State, Petitioner's sentence was excessive.

## GUILT PHASE ISSUES

3. Applicant was denied his rights to confront the witnesses against him, to a fair and reliable determination of both his guilt or innocence and his punishment, and to due process of law, in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the U.S. Constitution, by the State's failure to make a timely disclosure of exculpatory information before or at Applicant's trial, which information would have produced a reasonable doubt as to the Applicant's guilt, or which would have mitigated Applicant's punishment if convicted.

(a) The State failed to reveal to defense counsel exculpatory evidence or evidence which arguably was exculpatory during the guilt phase of the trial.

4. Applicant was denied his rights to effective assistance of counsel, to a fair and reliable determination of both his guilt or innocence and his punishment, to due process of law, and to the equal protection of the law, in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the U.S. Constitution and the corresponding Amendments of the S.C. Constitution by the State's failure to provide the Defendant or his lawyer reasonable pre-trial access to the State's evidence.

(a) The State's failure to and/or refusal to allow the Applicant even partial pre-trial discovery of information of the State's case violated Applicant's rights because:

(1) It hampered the Applicant's counsel in providing effective representation in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution.

(2) It denied applicant's counsel an opportunity to employ his own experts to examine the State's evidence prior to trial and so hampered the applicant's counsel in providing the effective assistance of counsel and a fair trial.

(3) This refusal or failure to provide even partial pre-trial discovery on behalf of the State denied the Applicant a

fair trial and equal protection of the laws and resulted in an arbitrary and capricious process in that it places the ultimate decision of whether a Defendant is guilty or not guilty or lives or dies on what discovery proceedings are available to defense counsel.

5. The Grand Jury indictment of Petitioner was invalid, in contravention of his rights under the due process and/or equal protection clauses of the Fourteenth Amendment.

(a) The Grand Jury indictment was returned by a Grand Jury which did not represent a fair cross-section of the voter population.

(b) The systematic exclusion from this Grand Jury of young people, blacks, and other ethnic groups was accomplished by an existing procedure in York County.

(c) A number of Grand Jurors were included on the Grand Jury which indicted the Applicant who had been prejudiced by pre-trial publicity of the deaths of elderly white women under suspicious circumstances.

(d) The inclusion on the Grand Jury of racially biased Grand Jurors.

6. The jury that convicted the Petitioner was selected in a manner that violated the right to a jury representing a fair cross-section of the community and violated the equal protection clause of the Fourteenth Amendment because of the systematic exclusion of various groups.

(a) The Applicant was convicted by an *all white* jury. There was a systematic exclusion of black, young jurors, and women from the venire which was selected for the Applicant's case.

7. Applicant was denied a fair trial, as required by the Sixth and Fourteenth Amendments, by the trial court's denial of a continuance to allow the dissipation of the prejudicial affects of pre-trial publicity concerning the case.

(a) The trial court should have, *sua sponte*, continued Applicant's trial because of the deaths of a number of elderly white women in York County during 1981 and 1982 under suspicious circumstances. Numerous reports in the media in both North and South Carolina saturated the public with reports, scare headlines, sympathetic expose's [sic] of the victim's families, and other expressions of outrage. Part of the area saturated was York County, from which the Applicant's venire was drawn.

8. Applicant's Sixth Amendment right to an impartial and representatively-drawn jury at the guilt and/or innocence stage of his trial was violated by the exclusion of all jurors who were deemed by the Court to be unable, by reason of their opposition to Capital Punishment, to have voted for imposition of the Death Penalty in the event that Applicant should be found guilty of murder.

9. The State employed their peremptory challenges in a racially discriminatory fashion in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

(a) The State, through the Solicitor's Office of the Sixteenth Judicial Circuit employed their strikes in this case and have in the past employed their peremptory strikes in a racially discriminatory fashion.

## SENTENCING ISSUES

10. The Applicant re-alleges and re-pleads all of the allegations and especially allegations 3, 4, 5, 6, 7, 8, and 9, with respect to sentencing. The factual basis for these issues as sentencing issues are set out below.

(a) The State's failure and/or refusal to allow Applicant even partial pre-trial discovery of information of the State's case violated Applicant's rights because:

(1) It hampered the Applicant's counsel in providing effective representation in violation of the Sixth and Fourteenth Amendments to the United States Constitution;

(2) It resulted in a "trial by surprise" which resulted in defense counsel's being unable to adequately prepare for and meet the State's evidence

and marshal the defense resources accordingly.

(3) The refusal or failure to provide even partial pre-trial discovery on behalf of the State denied the Applicant a fair trial and equal protection of the laws; Defendants in other states are routinely allowed pre-trial discovery and hence are able to be afforded a much more effective representation. In addition, approximately six (6) months after the Defendant was convicted, South Carolina effectuated a discovery rule which would have provided this Defendant access to the results of critical scientific tests which played a major role in conviction [of] this Applicant.

(b) The Grand Jury indictment of Petitioner was invalid, in contravention of his rights under the due process and/or equal protection clauses of the Fourteenth Amendment.

(1) The Grand Jury indictment was returned by a Grand Jury which did not represent a fair cross-section of the voter population.

(2) The systematic exclusion from this Grand Jury of young people, blacks, and other ethnic groups was accomplished by an existing procedure in York County.

(3) A number of Grand Jurors were included on the Grand Jury which indicted the Applicant who had been prejudiced by pre-trial publicity of the deaths of elderly white women under suspicious circumstances.

(4) The inclusion on the Grand Jury of racially biased Grand Jurors.

(c) The Applicant was sentenced to death by an all white jury and there was systematic exclusion of black, young jurors and women from the venire which was selected for the Applicant's case.

(d) The failure of the trial court to, *sua sponte*, continue Applicant's trial because of the deaths of elderly white women in York County during 1981 and 1982 under suspicious circumstances resulted in a jury whose decision to sentence the Applicant to death was in part based upon these news stories.

(e) The State employed their peremptory challenges in a racially discriminatory fashion, and the State in the 16th Judicial Circuit has a history of employing racially discriminatory peremptory challenges to exclude blacks from juries. The result was that the Defendant was sentenced to death by an all white jury.

11. The Petitioner's Sixth, Eighth, and Fourteenth Amendment rights were violated when he was sentenced to death in part or in total based on a non-unanimous jury's recommendation of a death sentence.

12. The Applicant's death sentence is unconstitutional under the Eighth and Fourteenth Amendments because the statute and/or jury instructions under which that sentence was imposed permitted the imposition of the death penalty on the basis of an aggravating circumstance whose justification is inconsiderable in relation to the justification of Capital Punishment.

(a) The aggravating circumstance whose justification was the consideration of the jury's death sentence was that of burglary which taken alone cannot serve as a justification for the extreme punishment of death.

13. The death penalty in this case, considered in light of the sentences imposed in similar cases and considering both the crime and the defendant, is so excessive and disproportionate as to violate the Eighth, Fifth and Fourteenth Amendments.

(a) Compared to the sentences imposed for similar homicides occurring in close proximity to the commission of the instant homicide, Applicant's sentence is excessive and disproportionate.

14. As administered in the State of South Carolina, the death penalty violates the Eighth and Fourteenth Amendments of the United States Constitution.

(a) It has been put into effect, through the discretionary actions of South Car-

olina prosecutors and sentencing authorities, according to a pattern and practice by which the punishment of death is inflicted in a racially discriminatory manner upon black defendants, and is almost always restricted to that minority of murderers convicted of the homicides of white victims in violation of the Eighth Amendment.

(b) It is imposed arbitrarily and capriciously on the basis of the geographic location of the homicide, in violation of the Eighth Amendment.

(c) It has been put into effect on the basis of a racially discriminatory intent on the part of South Carolina prosecutors and sentencing authorities to punish with death black defendants and whites convicted of the killing of white victims, in violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution.

(d) It results in a pattern and practice of arbitrary and capricious capital sentencing;

(e) It does not serve its supposive penological justifications of retribution and deterrence;

(f) It inflicts unnecessary physical and psychological pain because:

(1) The method of execution inflicts unnecessary physical pain, and

(2) The psychological strain of life on death row in conjunction with severe conditions of confinement there is cruel and unusual.

After a return by the respondents, a hearing on the merits was conducted on December 3 and 4, 1984. At this hearing, petitioner was represented by able counsel and 20 witnesses were called and testified. At the conclusion of the hearing, petitioner requested 30 additional days to be allowed to submit affidavits, investigate jury composition and take the deposition of an attorney purported to be an expert in capital cases. This request was granted and six affidavits were filed together with the *de bene esse* deposition.

The petitioner claimed that the prosecution had violated *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by withholding exculpatory information from him, and as a result of this claim, the state judge reviewed the solicitor's entire file and made a finding of no *Brady* violations. On February 21, 1985, oral arguments were heard and on March 27, 1985, the state court issued its order denying the application for postconviction relief.

On April 5, 1985, an appeal was taken to the South Carolina Supreme Court and on September 11, 1985, Spann petitioned for a writ of certiorari to that court raising the following questions:

I. Did the lower court err in denying the Petitioner's Application for Post Conviction Relief where the record supports his allegation that he received ineffective assistance of counsel in the sentencing phase of his trial, thereby violating his rights under the Fifth, Sixth and Fourteenth Amendments [to] the United States Constitution and Article I, Sections 3 and 14 of the South Carolina Constitution?

II. Was the Petitioner deprived of his rights under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 3 and 14 of the South Carolina Constitution, by virtue of being sentenced to death, when his sentence, considered in light of the sentence imposed in similar cases and considering both the crime and the defendant is excessive and disproportionate?

III. Did the lower court err in refusing to admit into evidence, even though already in the record, the affidavits of Ms. Caroline Yonce and Ms. Leigh Dingerson when the affidavits demonstrate the prejudice prong of ineffective assistance of counsel and demonstrate the fact that the jury's verdict was illegal, and unlawful, because of the consideration by many of the jurors of the defendant's failure to take the stand; all in violation of the Petitioner's rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Article 1, Sections 3 and 14 of the South Carolina Constitution?

IV. Did the lower court err in denying the Petitioner's Application for Post Conviction Relief where the record below supports his allegations that the Petitioner was denied his rights to even partial pre-trial discovery of information of the State's case, thereby denying him a fair trial and equal protection of the laws secured by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article 1, Sections 3 and 14 of the South Carolina Constitution?

V. Did the lower court err in denying the Petitioner's Application for Post Conviction Relief where the record reveals that the jury that convicted the Petitioner was selected in a manner that violated the Petitioner's right to a jury representing a fair cross-section of the community and violated the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and Article 1, Sections 3 and 14 of the South Carolina Constitution because of the systematic exclusion of various groups such as young educated jurors?

After a return was filed to this petition, the South Carolina Supreme Court on December 10, 1985 denied the petition for writ of certiorari. Petitioner then made petition for writ of certiorari to the United States Supreme Court and this was denied on May 5, 1986.

On June 12, 1986, petitioner filed for a writ of habeas corpus in the United States District Court for the District of South Carolina challenging his 1981 conviction for murder and sentence of death. On June 17, 1986, the district court entered an order granting a petition for stay of the execution of sentence until further order of the district court. The respondents made return and a motion for summary judgment on July 25, 1986, and after two extensions of time petitioner made a reply to the return on September 5, 1986. Motions were made to expand the record. The matter was referred to a United States Magistrate Judge for findings and recommendations pursuant to Rule 10 of Rules Governing § 2254 Cases in the United States District Court.

In his district court petition, Spann claims (1) denial of effective assistance of counsel in both phases of his state trial; (2) the failure of the state to disclose *Brady* material; (3) the failure of the state to grant pretrial discovery; (4) an invalid indictment because the grand jury did not contain a fair representation of the voter population, grand jurors had been prejudiced by pretrial publicity, and racially biased persons were on the grand jury; (5) the petit jury was not fairly representative of a cross section of the community; (6) denial of a fair trial because continuance motions based upon pretrial publicity were denied; (7) excluding from the trial jury of all jurors who were deemed by the court to be opposed to capital punishment; (8) the state's preemptory challenges were exercised in a racially discriminatory fashion; (9) the recommendation of the death sentence was based upon a non-unanimous jury's recommendation; (10) under the judge's charge to the jury a death sentence could be imposed on the basis of minor and inconsiderable aggravating circumstances; (11) that imposition of the death sentence was excessive and disproportionate in violation of the Eighth, Fifth and Fourteenth Amendments; (12) that the South Carolina death penalty statute violates the equal protection clause; (13) that the trial court's jury instruction on burglary violated the *ex post facto* provision of the United States Constitution; (14) that the use of burglary as an aggravating circumstance violated the *ex post facto* law because the elements of burglary had been broadened; (15) the trial court improperly disqualified prospective jurors on the ground of their opposition to capital punishment; (16) the prosecution's argument on facts not in the record were calculated to inflame the passions of the jury and deny petitioner a fair trial; (17) the trial court improperly qualified jurors whose answers on voir dire indicated that they were predisposed to vote in favor of a death sentence once guilt was established; (18) the state failed to prove the essential elements of the charge of burglary and his death sentence with burglary as an aggravating circumstance was illegal; (19) that the sentence was imposed

under the influence of passion, prejudice and other arbitrary factors because the solicitor argued during the penalty phase the facts of the criminal sexual conduct when the state was not relying upon this as an aggravating circumstance; (20) in allowing the indictment to be amended on the issue of the essential elements of burglary; (21) by instructing the jury not to be governed by sympathy in determining its recommended sentence; (22) in permitting the state to prove the element of burglary in part through testimony concerning the habits of the deceased.

The magistrate judge filed a report and recommendation of 173 pages in which he meticulously examined the claims and the evidence and recommended that relief be denied. Petitioner sought and received an extension of 90 days within which to file his objections to the report. On November 3, 1987, he filed his objections to the magistrate judge's report and at the same time sought a third amendment to his habeas corpus petition in order to state four additional grounds: (1) that the trial court's penalty phase instructions violated the Eighth Amendment in that the jury was misled into believing that the sentence was not binding upon the trial judge but instead was merely a recommendation; (2) that the solicitor's penalty phase argument violated the Eighth Amendment because the solicitor suggested to the jury that the death penalty should be imposed because of the effect and impact of the crime upon the victim and the victim's friends and family; (3) that the trial court incorrectly informed the jury at the penalty phase of petitioner's trial, in violation of the Eighth Amendment, that any verdict of life imprisonment must be unanimous; and (4) that the trial court's instructions regarding reasonable doubt improperly lessened the state's burden of proof in violation of the Fourteenth Amendment.

On March 4, 1988, the district court granted the motion to amend and recommitted the matter to the magistrate judge. On April 8, 1988, the respondents filed their second answer, memorandum and a motion for summary judgment and supplemental briefing was permitted to all parties. On August 18, 1989, the magistrate entered a second recommendation consisting of 50 pages and recommending that summary judgment be granted in favor of respondents. Petitioner filed exceptions thereto on October 2, 1989, and on November 29, 1989, filed a supplemental memorandum challenging the anti-sympathy instruction and further argument on the *ex post facto* claim regarding the definition of burglary.

No action was taken by the district court for more than 16 months. In the interim, petitioner filed another supplemental memorandum on January 3, 1991, rearguing the constitutionality of the reasonable doubt instruction to which the respondents replied by memorandum on February 19, 1991.

On February 28, 1991, Spann filed a motion for leave "to reexhaust his claim of ineffective assistance of counsel in the South Carolina Courts in light of *Frett v. State*, 298 S.C. 54, 378 S.E.2d 249 (1988), and other recent cases granting relief on the basis of ineffective assistance of counsel." *Frett* was decided on September 26, 1988, and petitioner's motion to re-exhaust his ineffective assistance of counsel claim was not filed until 29 months later, and at the time of the present appeal no action for additional post-conviction relief had been brought in the state court.* After respondents filed their objections to the motion for re-exhaustion, the district court filed its order which provided:

This matter is before the Court on the petitioner's motion to dismiss without prejudice his petition for habeas corpus relief. The grounds asserted for the motion are that petitioner desires to seek relief in state court based on changes in state law which may afford him relief. Several of these asserted changes affect matters which are the subject of the ha-

---

* On November 12, 1991, a new Application for Post Conviction Relief was filed in the state court.

beas petition. The State opposes, though not persuasively, the granting of this motion. After reviewing the petition, motion, and other material of record, this Court is of the opinion that this is an appropriate case for dismissal of the habeas petition. Accordingly, the petition for habeas corpus relief is hereby dismissed without prejudice.

The district court did not discuss either the new issues to be pursued in state court or the lengthy history of the litigation in the district court or give any explanation of why the case had been pending for five years or what prejudice might be occasioned by further delay. The district court's order does not identify the alleged changes in South Carolina law, nor does it indicate that there is any merit to these new claims.

## II.

This matter has been pending in the United States District Court since 1986. It has been twice referred to the magistrate judge, who first filed a comprehensive report and recommendation of 173 pages. After petitioner obtained an extension of 90 days to file his objections to the report, he also filed a motion to amend his original petition which was granted. The matter was then sent back to the magistrate who considered the new grounds and filed a report and recommendation of 50 pages, which again carefully and meticulously discussed the new grounds raised in the amendment and recommended a denial of the petition. At long last the time had come for the district court to act on the matter before it, but instead it granted a motion to dismiss the five year old petition without prejudice.

The district judge abused his discretion when he granted the motion to dismiss without prejudice in order to allow the petitioner to "reexhaust his claim of ineffective assistance of counsel" under his contention that the South Carolina Supreme Court in *Frett v. State*, 298 S.C. 54, 378 S.E.2d 249 (1988), "and other recent cases granting relief on the basis of ineffective assistance of counsel" represented a significant change in the law by relaxing or obviating the prejudice prong of the test adopted in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The *Strickland* test requires a showing that a convicted defendant's counsel's performance was deficient because it fell below an objective standard of reasonableness, and that the defendant was prejudiced thereby. To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Petitioner claims that the South Carolina Supreme Court in *Frett* held that "the prejudice requirement is satisfied by demonstrating that but for counsel's ineffectiveness, a defendant's trial, but not necessarily its outcome, would have been altered in a way helpful to him." 378 S.E.2d at 250–51.

A quick review of *Frett* and the opinions of the South Carolina Supreme Court subsequent to *Frett* would have shown the district court that if *Frett* changed the prejudice prong of *Strickland*, which is doubtful, such change applied only to *Frett*.

*Frett* was an unusual case because the attorney who had represented Frett was quite familiar to the South Carolina Supreme Court and had been publicly reprimanded for neglecting legal matters entrusted to him and handling legal matters without adequate preparation in *Matter of Gaines*, 279 S.C. 531, 309 S.E.2d 5 (1983), and had been indefinitely suspended because his actions reflect "a pattern of unprofessional conduct and demonstrate his present unfitness to practice law." *Matter of Gaines*, 293 S.C. 314, 360 S.E.2d 313, 314 (1987). In *Frett* the court found: "While a defendant must ordinarily show that counsel's ineffective assistance resulted in actual prejudice, such a showing may be exempted where counsel's ineffectiveness is so pervasive as to render a particularized prejudice inquiry unnecessary." 378 S.E.2d at 251. When the South Carolina court decided *Frett* in 1988, it had just

previously (1987) decided that his trial attorney, Gaines, was unfit to practice law, and after reviewing the record in *Frett*, it found "ineffectiveness is so pervasive as to render a particularized prejudice inquiry unnecessary."

A review of the decisions in the South Carolina Supreme Court reflects that *Frett* has not been cited by the court, since it was originally decided, and the court has in *Austin v. State*, 409 S.E.2d 395 (S.C.1991); *Geter v. State*, 409 S.E.2d 344 (S.C.1991); *Kerrigan v. State*, 406 S.E.2d 160 (S.C. 1991); and *Jivers v. State*, 406 S.E.2d 154 (S.C.1991), continued to apply the second prong of *Strickland* as originally set forth by the United States Supreme Court, and without any reference to *Frett*. We conclude that any dismissal to allow a reexhaustion of the ineffective assistance of counsel claim based upon *Frett* is an abuse of discretion, because the claim is obviously frivolous, and a dismissal at this stage of a federal habeas proceeding would only add to the embarrassing length of time that has elapsed since the case was filed in the federal courts.

The respondents have a right to a prompt decision of the petitioner's claim on the merits. The public also has a vital interest in the fair and prompt conclusion of habeas corpus petitions in the federal courts, particularly when they involve a serious crime prosecuted by one of the states. The district court has a duty to decide cases within its jurisdiction. This has been referred to as "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). While this "unflagging obligation" language was made with reference to abstention, the principle applies with even more force to a habeas corpus case that has been pending for more than five years.

We have concluded that there is no merit to the *Frett* claim, and we now remand this action to the district court for a prompt consideration of the magistrate judge's reports and recommendations and the objections thereto.

### III.

In his motion for dismissal to allow reexhaustion of his state remedies, Spann mentioned only his claim of ineffective assistance of counsel. However, in the memorandum of law supporting this motion and in his brief to this court, he has raised two additional issues, the jury charge as to reasonable doubt and the charge as to the sentencing recommendation. On remand, the district court will be given an opportunity to address these points.

REVERSED AND REMANDED WITH INSTRUCTIONS.