BOGGS, Chief Judge,
dissenting.
The court orders a stay to any discovery that would otherwise be barred by the attorney-client or work product privileges until we are able to consider Lott’s request for relief. Because it does so without sufficiently close scrutiny to the form of relief Lott requests, which is interlocutory mandamus relief from a discovery order, I believe it has incorrectly evaluated not only Lott’s likelihood of success, but also the other factors that affect our decision to grant a stay. Though these reasons would suffice to motivate my dissent, I further disagree with the court’s suggestion that a habeas petitioner asserting actual innocence does not waive attorney-client privilege. For these reasons, I respectfully dissent.
Lott’s motion for a stay of proceedings cannot be divorced from the relief he ultimately seeks. The court correctly identifies the four factors relevant to the granting of a stay, which are (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay. Slip Op. at -; Grutter v. Bollinger, 247 F.3d 631, 632 (6th Cir.2001) (citing Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog, 945 F.2d 150, 153 (6th Cir.1991)); see also Hilton v. Braunskill, 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987) (identifying these four factors). However, Lott is not before this court on an appeal from the resolution of a petition for writ of habeas corpus. He is instead before us on a petition for mandamus relief, which “is an extraordinary remedy, only infrequently utilized by this court.” In re Perrigo Co., 128 F.3d 430, 435 (6th Cir.1997). As such, we cannot examine Lott’s motion for a stay only on the substantive legal question involved, though, were we to, I would still disagree. Rather, our review must evaluate these factors in light of Lott’s request of interlocutory relief.
Whether Lott should receive a writ of mandamus turns on a variety of factors beyond simply whether we ultimately find merit in Lott’s legal position. See ibid. These factors include:
(1) The party seeking the writ has no other adequate means, such as direct appeal, to attain the relief desired.
(2) The petitioner will be damaged or prejudiced in a way not correctable on appeal. (This guideline is closely related to the first.)
*664 (3) The district court’s order is clearly erroneous as a matter of law.
(4) The district court’s order is an oft-repeated error, or manifests a persistent disregard of the federal rules.
(5) The district court’s order raises new and important problems, or issues of law of first impression.
Ibid, (quoting In re Chimenti, 79 F.3d 534, 540 (6th Cir.1996)). In deciding whether or not to grant the writ, we balance the factors. Ibid, (quoting Chimenti, 79 F.3d at 540). This is necessary because “ ‘[r]arely if ever will a case arise where all the guidelines point in the same direction or even where each guideline is relevant or applicable.’” In re Bendectin Prods. Liab. Litig., 749 F.2d 300, 304 (6th Cir. 1984) (quoting Bauman v. United States Dist. Court, 557 F.2d 650 655 (9th Cir. 1977)). Indeed, this court has observed that factors (4) and (5) are “to some degree contradictory.” In re Parker, 49 F.3d 204, 211 (6th Cir.1995). My disagreement with the majority begins with, but is not limited to, its failure to adequately consider these factors in evaluating whether to grant a stay.
While I believe the question of whether a claim of actual innocence waives attorney-client privilege is a new and important issue, I cannot agree that direct appeal will not offer Lott an adequate forum in which to adjudicate it. More to the point, I do not believe that denying Lott’s mandamus petition, but of course leaving him his standard course of appeals should that become desirable to him, will prejudice Lott “in a way not correctable on appeal.” Ibid. In Pertigo, this court recognized that discovery-based violations of attorney-client privilege “may bring about irreparable harm.” Id. at 437 (emphasis added). But that cannot mean that any discovery order that impinges on the privilege is automatically grounds for mandamus relief. See id. at 435 & 437 (emphasizing our court’s “flexible” approach to mandamus review). Instead, the risk of irreparable harm turns on the circumstances. See id. at 437 (discussing particular problems faced in that case by a corporation asserting attorney-client privilege).
The circumstances of this case convince me that mandamus relief is not warranted. Petitioner’s case is very different from the typical case in which mandamus relief is granted for abusive discovery orders: a complex commercial litigation that is in its beginning stages. This difference matters, not because the harm facing Lott is any less (quite the opposite), but because it impacts this court’s ability to remedy that harm on appeal. In the conventional circumstance of commercial litigation, the aggrieved party reasonably fears that losing attorney-client privilege opens a Pandora’s box of wrongly gained evidence and accompanying legal theories. An appellate court is thus faced with the probability that a comprehensive case will emerge on appeal from which “tainted” evidence and theories cannot be separated from those legitimately developed. See United States v. Philip Morris, Inc., 314 F.3d 612, 619 (D.C.Cir. 2003) (“It would be impossible for a court to sort out and redress the harm caused by the incorrect disclosure.”). As one of our sister circuits has accurately, if colorfully, put it, “there is no way to unscramble the egg scrambled by disclosure.” In re Ford Motor Co., 110 F.3d 954, 963 (3d Cir.1997).
That concern is not nearly as prevalent in this case. Here, the parties have been litigating against each other for nearly twenty years throughout the state and federal courts. The issues are clear. Thus, the state’s attorneys are unlikely to use whatever they find to pursue new avenues of evidence, adopt new legal positions, or the like. Instead, they hope to extract evidence readily identifiable as stemming from otherwise privileged communications: *665 that Lott admitted to his lawyers either that he had committed the murder or that he confessed to police and that his lawyers were aware of the victim’s description of his attacker. They seek to extract this evidence for one reason only: to convince the district court that Lott cannot make a claim of factual innocence. Rather than a mix of legal theories that will be difficult to unravel, this court is faced with one legal theory supported by evidence that can be easily separable into that which is potentially privileged and that which is not. Thus, there is little reason to believe that we could not remedy any error, if indeed there were to be error, on direct appeal, just as we do with other evidentiary issues.
For similar reasons, I also evaluate the second factor differently than the court. The above reasoning makes me doubt that Lott will be “irreparably harmed” should we deny the stay. Grutter, 247 F.3d at 632 (emphasis added). Because I disagree with the majority that, in this case, the disclosure of privileged documents could not be remedied on appeal, I also believe that our future substantive adjudication of Lott’s petition for mandamus relief can remedy any harm this court concludes he has suffered.[2] Thus, the present circumstance is not a case where the harm facing petitioner “cannot be undone.” Id. at 633.
Of greater importance is my disagreement with the court concerning the fourth and final factor; whether the public interest favors granting the stay. Ibid. The majority relies on the general public interest on a reliable and uniform attorney-client privilege. See Slip Op. at -; see also Rhone-Poulenc Rarer Inc. v. Home Indem. Co., 32 F.3d 851, 862-63 (3d Cir. 1994). I do not necessarily dispute that the public has such an interest. I question, however, whether that interest is impacted by the grant or denial of this stay, which is only effective for the duration of our consideration of Lott’s petition for mandamus relief. While the public may have some interest in our eventual resolution of this case and its impact on the contours of the attorney-client privilege, that interest is remote from its interest in one stay affecting one litigant in a unique predicament.
Instead, I would find the public’s interest, that of the people of Ohio, to be more closely aligned with the State of Ohio’s interests than those of petitioner. The State’s interests in finality and efficient uses of its judicial resources, see Slip Op. at -, are also the people’s interest. Their tax dollars comprise the State’s judicial resources. The public also “ ‘has a vital interest in the fair and prompt conclusion of habeas corpus petitions in federal courts, particularly when they involve a serious crime prosecuted by one of the states.’” Parker, 49 F.3d at 208 (quoting Spann v. Martin, 963 F.2d 663, 673 (4th Cir.1992)).
Therefore, I would deny the stay on the basis that all four factors counsel against its issuance. To summarize: as the court agrees, the State has an interest in prompt resolution of this case. At this stage in the litigation, the public’s interest seems to me to be squarely aligned with that of the State of Ohio. While Lott may be injured by the results of this discovery order, I cannot say that the harm will be irreparable because it seems this issue can be resolved via the normal appeals process. For that same reason, I believe Lott cannot show a likelihood of success on the merits of his petition for mandamus, the only issue currently before us, regardless of whether this court disagrees with the *666 district court’s legal conclusion that an assertion of actual innocence waives attorney-client privilege. I would therefore deny the stay for the above-mentioned reasons.
However, especially in light of the majority’s arguments to the contrary, I wish to express my respectful disagreement with its suggestion that a habeas petitioner’s assertion of actual innocence, when used to argue for the consideration of a second habeas petition, does not implicitly waive the petitioner’s attorney-client privilege as to that issue. To begin with, the deficiency with the district court’s position cannot be that there is no direct authority to support it. If so, then the same criticism can be levied against the court’s current order. Neither the majority nor I can find authority that directly addresses the question at issue: whether the assertion of a claim of actual innocence waives the attorney-client privilege. The novelty of the district court’s position is little indication that it is incorrect.[3]
I do not disagree with the court that implied waivers are justified on the basis of “ensur[ing] the fairness of the proceedings before it.” See Slip Op. at-(quoting Bittaker v. Woodford, 331 F.3d 715, 720 (9th Cir.2003) (en banc)). However, as our sister circuit made clear in Bittaker, the waiver should be tailored narrowly “so as to be fair to the opposing side.” Ibid. This requires a waiver “closely tailored ... to the needs of the opposing party in litigating the claim in question.” Ibid. In Bittaker, that claim was an ineffective assistance of counsel claim and our sister circuit reasonably limited the scope of the petitioner’s waiver to matters relating to his counsel’s ineffectiveness.
Here, the claim is one of actual innocence because petitioner seeks to file a successive habeas petition. Schlup v. Delo, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Actual innocence is “factual innocence, not mere legal insufficiency.” Bousley v. United States, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). The inquiry is then into whether Lott in fact committed the murder, not whether the state could meet its burden of proof that Lott committed the murder. As the Supreme Court decided in Schlup, this means that “the district court is not bound by the rules of admissibility that would govern at trial.” 513 U.S. at 327, 115 S.Ct. 851. The district court’s determination can be based on “relevant evidence that was either excluded or unavailable at trial.” Id. at 327-28, 115 S.Ct. 851. What Lott said to his trial counsel about the crime is certainly relevant. It could never have been admitted at trial because of the attorney-client privilege. But, on my reading, Schlup indicates that the admissibility of the evidence at a regular trial is irrelevant.
Moreover, as the Ninth Circuit recognized in Bittaker, the federal system has interests in the adjudication of habeas petitions that are distinct from the state’s interests. 331 F.3d at 721-22. Our sister circuit admitted that, at least hypothetically, the attorney-client privilege “might have to yield” to a particularly important federal interest. Id. at 722. While it could “conceive of no federal interest in enlarging the scope of the waiver beyond what is needed to litigate the claim of ineffective assistance of counsel,” ibid., the Ninth Circuit was not faced with a claim of actual innocence. Actual innocence serves as an exception for otherwise proeedurally *667 defaulted claims on the basis that it is a fundamental miscarriage of justice to incarcerate the “entirely innocent.” Schlup, 513 U.S. at 325, 115 S.Ct. 851. The federal system has an interest in limiting this exception to “the ‘extraordinary case’” id. at 321, 115 S.Ct. 851 (quoting Murray v. Carrier, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)), that is applied for “those who [are] truly deserving,” ibid. To determine if Lott is truly deserving, i.e., that he is actually innocent, I am inclined to believe the federal district court has a right to examine all of the relevant evidence.
Therefore, I believe that Lott cannot show a likelihood of success on the merits because, regardless of whether we review the district court’s decision now or on direct appeal, I am inclined to believe that it did not err. However, granting a stay in this case requires more than disagreeing with the district court’s conclusion about the scope of implied waiver. To grant the stay, one must assert that Lott will likely succeed in his petition for mandamus relief, which may not happen for reasons other than the implied waiver issue, and that at least some of the other factors favor granting a stay until we adjudicate his petition for mandamus. For the reasons stated above, I believe all these factors favor respondent and would accordingly deny the stay.

. Indeed, should this court decide that Lott has not implicitly waived the attorney-client privilege as to his actual innocence, we could file an opinion on the merits before the district court considers the evidence at issue.

. Thus, it is also no reason to disagree with the district court’s reasoning that habeas courts have generally applied an implied waiver of attorney-client privilege when the petitioner asserts ineffective assistance of counsel. The issue is whether that principle has application in this context.