**In re Phil PARKER, Warden, Kentucky State Penitentiary, Petitioner.**

No. 94–5988.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 1, 1995.

Decided March 7, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied April 12, 1995.

Elizabeth A. Myerscough and David A. Smith, Asst. Attys. Gen. (argued and briefed), Frankfort, KY, for petitioner.

Stefanie M. McArdle, Kentucky Capital Litigation Resource Center, J. Vincent Aprile, II (argued and briefed), Dept. of Public Advocacy, Frankfort, KY, for respondent.

Before: KENNEDY, BOGGS, and SILER, Circuit Judges.

BOGGS, Circuit Judge.

Phil Parker, Warden of the Kentucky State Penitentiary, petitions for a writ of mandamus. Parker petitions for an order directing the district court to revoke the appointment of counsel and vacate the stay of execution entered pursuant thereto. Both the appointment of counsel and the stay of execution stem from the July 19, 1994 and the July 27, 1994 orders of Judge Johnstone of the United States District Court for the Western District of Kentucky. These orders appoint counsel for, and stay the execution of, Kevin Stanford. Stanford is a death-sentenced prisoner currently incarcerated at the Kentucky State Penitentiary. For the reasons set out more fully below, the petition is granted in part. The district court is directed to vacate the stay of execution, purportedly entered pursuant to 28 U.S.C. § 2251.

## I

On the evening of January 7, 1981, Kevin Stanford, then age 17, and two accomplices, David Buchanan (age 16) and Troy Johnson (age 15), robbed the Checker gasoline station on Cane Run Road in southwestern Jefferson County, Kentucky. The clerk at the station was Barbel Poore. While Johnson sat outside in a car, Buchanan and Stanford entered the store. Stanford carried a loaded pistol. While Buchanan attempted to open the store's safe Stanford took Poore to an interior restroom where he raped her. When Buchanan was unable to open the safe he joined Stanford in the restroom. Both men then took turns raping and sodomizing Poore. Apparently concerned that Poore might recognize them, Stanford drove Poore

in her own car to an isolated area. Once there, Stanford shot Poore to death.

On August 12, 1982, a jury convicted Stanford of intentional murder and other crimes. Stanford was sentenced to death for the intentional murder on September 28, 1982.

The Kentucky Supreme Court affirmed the conviction and sentence on April 30, 1987. *Stanford v. Commonwealth*, 734 S.W.2d 781 (1987). The United States Supreme Court granted certiorari to determine whether the execution of a person who was a juvenile at the time of the crime was cruel and unusual punishment under the Eighth Amendment. *Stanford v. Kentucky*, 488 U.S. 887, 109 S.Ct. 217, 102 L.Ed.2d 208 (1988), *as amended*, 488 U.S. 906, 109 S.Ct. 256, 102 L.Ed.2d 245 (1988). The Supreme Court affirmed the conviction and sentence. *Stanford v. Kentucky*, 492 U.S. 361, 109 S.Ct. 2969, 106 L.Ed.2d 306 (1989).

On April 30, 1990, Stanford filed a motion under Kentucky Rule of Criminal Procedure 11.42 to vacate, set aside, or correct his judgment of conviction and sentence of death. The Jefferson Circuit Court denied this motion on June 28, 1990.

On January 21, 1993 the Kentucky Supreme Court affirmed the circuit court's order. *Stanford v. Commonwealth*, 854 S.W.2d 742 (1993). Stanford petitioned the United States Supreme Court for a writ of certiorari on September 29, 1993. The Supreme Court denied the petition on January 10, 1994. *Stanford v. Kentucky*, — U.S. —, 114 S.Ct. 703, 126 L.Ed.2d 669 (1994). Stanford has now exhausted all state remedies. Therefore, Stanford's case is ripe for federal habeas review, if he seeks such review.

By stated policy, Kentucky allows death row prisoners 90 days to initiate the next step in their litigation, before setting an execution date. Stanford's 90-day period began to run when the Supreme Court denied the petition for certiorari. As the end of his 90-day period approached, Stanford's attorney, by letter dated April 6, 1994, requested an additional 90 days in which to file the habeas corpus petition. The attorney's supervisor provided a letter concurring in his request because of his busy schedule. Kentucky

granted this request and, based on representations in the letter, set a July 9, 1994, deadline for filing the habeas petition. By the end of this period, neither a petition nor any other communication had arrived.

On July 13, 1994, Governor Brereton C. Jones signed a Death Warrant setting Stanford's execution date for August 12, 1994.[1] This provided Stanford with an additional thirty days in which to file his habeas petition. Rather than filing a habeas petition, Stanford moved a federal district court on July 19, 1994 for appointment of counsel and a stay of execution. The motion was prepared and signed by J. Vincent Aprile II. Mr. Aprile is employed by the Kentucky Department of Public Advocacy. Mr. Aprile and the Department have represented Stanford since the United States Supreme Court rejected Stanford's direct appeal in 1989.

Stanford based the motion on the authority of 21 U.S.C. § 848(q)(4)(B) and the United States Supreme Court's recent decision in *McFarland v. Scott,* ——— U.S. ———, 114 S.Ct. 2568, 129 L.Ed.2d 666 (1994). The United States Supreme Court decided *McFarland* in June of 1994, during Stanford's 90–day extension. The district court appointed Mr. Aprile as counsel *ex parte* on July 19, but deferred entering a stay until Kentucky had an opportunity to respond. On July 27, 1994, after a telephonic conference, the district court denied Kentucky's motion requesting that the order appointing counsel be vacated. The district court also entered an indefinite stay.

On August 5, 1994, Kentucky filed a petition for a writ of mandamus. Stanford filed a response to the petition on September 2, 1994. Both parties filed supplementary letter briefs in December 1994. These briefs addressed the applicability of this Circuit's decision in *Steffen v. Tate,* 39 F.3d 622 (6th Cir.1994). As of oral argument, on February 1, 1995, more than six months after the district court entered the stay and almost thirteen months after the Supreme Court's deni-

al of certiorari, Stanford has not filed a habeas petition. Kentucky's petition for a writ of mandamus requests that this court direct the district court to revoke the appointment of counsel and dissolve the stay.

## II

This court's authority to issue a writ of mandamus is derived from the "All Writs Statute," 28 U.S.C. § 1651. The statute states that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." *Id.* Rule 21 outlines the procedure a petitioner uses to secure a writ of mandamus. Fed. R.App.P. 21.

Mandamus is a drastic remedy, to be invoked only in extraordinary situations where the petitioner can show a clear and indisputable right to the relief sought. *Will v. Calvert Fire Ins. Co.,* 437 U.S. 655, 661–62, 98 S.Ct. 2552, 2556–57, 57 L.Ed.2d 504 (1978); *Kerr v. United States District Court,* 426 U.S. 394, 402–03, 96 S.Ct. 2119, 2123–24, 48 L.Ed.2d 725 (1976); *In re NLO, Inc.,* 5 F.3d 154, 155–56 (6th Cir.1993); *In re Glass Workers Int'l Union Local 173,* 983 F.2d 725, 727 (6th Cir.1993). In particular, "mandamus is disfavored because it has 'the unfortunate consequence of making the judge a litigant, obliged to obtain personal counsel or to leave his defense to one of the litigants [appearing] before him.'" *In re Blodgett,* 502 U.S. 236, 243, 112 S.Ct. 674, 678, 116 L.Ed.2d 669 (1992) (Stevens, J., concurring) (quoting *In re Fahey,* 332 U.S. 258, 260, 67 S.Ct. 1558, 1559, 91 L.Ed. 2041 (1947)). There must be a demonstrable abuse of discretion or conduct amounting to usurpation of judicial power for the writ to issue. *Mallard v. United States District Court,* 490 U.S. 296, 309, 109 S.Ct. 1814, 1822, 104 L.Ed.2d 318 (1989); *In re NLO, Inc.,* 5 F.3d at 156; *United States v. Ford (In Re Ford),* 987 F.2d 334, 341 (6th

---

1. Stanford argues that because the death warrant expired, this matter is moot until a new execution date is set. We find this argument unpersuasive. Kentucky stands ready, willing, and able to execute Stanford. The federal courts have stayed that effort. Kentucky has reasonably read the stay as precluding it from implementing a new death warrant. An honest reading of a federal stay in a capital case should not be discouraged by finding that it moots Kentucky's claim.

Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 180, 121 L.Ed.2d 126 (1992).

■ An error of law, standing alone, is not sufficient to warrant mandamus. If it were, every erroneous interlocutory order would be subject to mandamus review. *In re NLO, Inc.*, 5 F.3d at 156. However, mandamus can be *"used to confine an inferior court to a lawful exercise of its prescribed jurisdiction* or to compel it to exercise its authority when it is its duty to do so." *Kerr*, 426 U.S. at 402, 96 S.Ct. at 2123 (citations omitted)(emphasis added); *see In re General Motors Corp.*, 3 F.3d 980, 983 (6th Cir.1993). " 'The general principle which governs proceedings by mandamus is, that whatever can be done without the employment of that extraordinary writ, may not be done with it. It lies only where there is practically no other remedy.' " *In re NLO, Inc.*, 5 F.3d at 156 (quoting *Helstoski v. Meanor*, 442 U.S. 500, 505, 99 S.Ct. 2445, 2448, 61 L.Ed.2d 30 (1979)).

· The Sixth Circuit has adopted a five-step process for examining whether there are extraordinary circumstances warranting mandamus relief. *In re Bendectin Prods. Liab. Litig.*, 749 F.2d 300, 303–04 (6th Cir.1984). The five steps are: 1) whether the party seeking the writ has no other adequate means, such as direct appeal, to attain the relief needed; 2) whether the petitioner will be damaged or prejudiced in a way not correctable on appeal; 3) whether the district court's order is clearly erroneous as a matter of law; 4) whether the district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules; 5) whether the district court's order raises new and important problems, or issues of law of first impression. The factors are cumulative and should be balanced; they may not all point to the same conclusion. *Id.* at 304. Furthermore, the absence of any factor is not

controlling. *Id. See also In re NLO, Inc.*, 5 F.3d at 156.

### III

■ The issue presented by the petition that we will address is whether the district court's order appointing counsel under 21 U.S.C. § 848(q)(4)(B) gave it jurisdiction over the action sufficient to allow it to enter a stay pursuant to 28 U.S.C. § 2251.[2] Even if this ruling is improper, the extraordinary relief of mandamus must be warranted on additional grounds.

*A. Does the party seeking the writ have any other adequate means, such as direct appeal, to gain relief?*

Kentucky has other possible means of gaining some relief. Rather than petition for mandamus the state could directly appeal the stay, treated as an injunction. *See* 28 U.S.C. 1292. Furthermore, Kentucky could, at the end of the entire habeas proceeding, assuming that one is ever filed, appeal the initial appointment of counsel. However, to call these means "adequate" would be thin gruel indeed. There does not appear to be any way short of the drastic remedy used here for Kentucky to gain a prompt and effective review of the pre-petition appointment and stay. If, as proposed by Stanford, the state waited until the district court decides the actual petition, when and if Stanford actually files it, under any reasonable understanding of mootness the issue will be just that, moot. The decision of the appellate court could do nothing to provide a remedy for the improper delay caused by the pre-petition stay. Kentucky also correctly notes that a federally imposed stay infringes on its strong interest in carrying out its legal processes. An appeal would create an even greater delay, and if Stanford files a habeas petition, or the

---

2. We recognize that Kentucky appears to advance an argument with broader implications. That is, Kentucky claims that because, unlike the situation in Texas, every death row prisoner in Kentucky receives constant state-funded representation, such prisoners are not financially incapable of securing counsel—they already have counsel. Impliedly, this means that Kentucky considers the circumstances when a *McFarland*

appointment would be appropriate rarely, if ever, exist in Kentucky. We decline to address this arguments on the merits. First, it is appropriate to rule on the narrower grounds available in this case. Second, such a claim, that the appointment of counsel itself is erroneous and should be vacated, would be inappropriate for mandamus review, since it is not indisputable.

district court dissolves the stay, that appeal would immediately be mooted.

### B. Will the petitioner be damaged or prejudiced in a way not correctable on appeal?

Clearly the stay creates prejudice. That is, memories fade and evidence dissipates. This creates a burden on the state in the event of a retrial. *Kuhlmann v. Wilson,* 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986). Courts have also recognized that the delay itself impinges on the sovereignty of the state. A capital sentence is, for obvious reasons, the only sentence that a state usually cannot carry out without the review and at least tacit approval of the federal courts. After all, habeas is useless to a dead man. However, the corollary of this rule is that states have a right to a speedy review of their judgments.

We require priority for death penalty habeas actions not only "because of the interests of the petitioner, who may be unlawfully kept on death row, but also the state, whose interests in finality deserve the concern and deference of the federal courts." *Rust v. Clarke,* 960 F.2d 72, 73 (8th Cir.1992) (per curiam). Similarly the public "has a vital interest in the fair and prompt conclusion of habeas corpus petitions in federal courts, particularly when they involve a serious crime prosecuted by one of the states." *Spann v. Martin,* 963 F.2d 663, 673 (4th Cir.1992). *See also In re Dutton,* 9 F.3d 1548 (6th Cir.1993) (unpublished), 1993 WL 460773 (Nov. 9, 1993). Therefore, even when a district court properly grants a stay, courts recognize that it should not be unlimited, or of a duration controlled by the prisoner. Instead "[i]n a capital case the grant of a stay of execution directed to a state by a federal court imposes on that court the concomitant duty to take all steps necessary to ensure a prompt resolution of the matter, consistent with its duty to give full and fair consideration to all of the issues presented in the case." *In re Blodgett,* 502 U.S. 236, 240, 112 S.Ct. 674, 676, 116 L.Ed.2d 669 (1992).

The Supreme Court has recognized a state's interest in seeing its judgments and sentences carried out in a timely and orderly manner. "Reexamination of state convictions on federal habeas 'frustrate[s]' both the state's sovereign power to punish offenders and their good faith efforts to honor constitutional rights.'" *McCleskey v. Zant,* 499 U.S. 467, 491, 111 S.Ct. 1454, 1469, 113 L.Ed.2d 517 (1991) (quoting *Murray v. Carrier,* 477 U.S. 478, 487, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397 (1986) and *Engle v. Isaac,* 456 U.S. 107, 128, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982)). Similarly, in *Blodgett,* the Court noted that the Ninth Circuit's stay "has prevented Washington from exercising its sovereign power to enforce the criminal law, an interest we found of great weight in *McCleskey* when discussing the importance of finality in the context of federal habeas corpus proceedings." *Blodgett,* 502 U.S. at 239, 112 S.Ct. at 676. *See also Barefoot v. Estelle,* 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983).

It has been more than fourteen years since Stanford sodomized and murdered Barbel Poore. While most of this delay has occurred on the state level, it is incumbent upon the federal courts that they not compound delay through the improper use of their limited powers of habeas review. As the Supreme Court bluntly stated in *McCleskey,* "[p]erpetual disrespect for the finality of convictions disparages the entire criminal justice system." *McCleskey,* 499 U.S. at 492, 111 S.Ct. at 1469. The delay caused by the stay of execution in this case prejudices Kentucky in a way not correctable on appeal.

### C. Is the district court's order clearly erroneous as a matter of law?

This case shows a sharp divergence of opinion between Kentucky and Stanford as to the proper procedure by which Stanford can continue to challenge his conviction and death sentence.

The state's position is that once the court has sentenced the prisoner to death, and all appeals through the state judicial system, including a petition for a writ of certiorari to the United States Supreme Court, have been exhausted, the state is at once free to carry out that execution. This is not to say that Kentucky plans to exercise this right precipitously. State policy is to grant a period of

ninety days after the Supreme Court's denial of certiorari before it even sets an execution date.

In this case, the state, upon specific requests, granted another ninety days. It set an execution date, which in this case was an additional thirty days in the future, only when this second ninety-day period, and the explicit commitment to file a writ of habeas corpus within that ninety-day period, expired without explanation and without notice.

Stanford's position is rather more remarkable. That contention is that, after the denial of the petition for certiorari, current law entitles counsel to whatever time he needs (with an apparent minimum of one year), to file an "adequate" petition for a writ of habeas corpus, and during that period the prisoner may not be executed. *See* Stanford's response to Kentucky's mandamus petition at 41 ("one year to prepare and file an indigent capital defendant's federal habeas corpus petition does not appear excessive or dilatory").[3] Certainly the state's position was correct and completely in accordance with the conventional state of federal habeas corpus jurisdiction, until very recently.

Stanford argues that two things have changed:

1. the enactment by Congress of 21 U.S.C. § 848(q)(4)(B) in 1988; and

2. the Supreme Court's decision in *McFarland v. Scott*, based in part on that Section.

Stanford is wrong in both respects.

A brief review of the relevant factual circumstances surrounding *McFarland* would be profitable. McFarland had been convicted of capital murder. The Texas courts affirmed the conviction and the United States Supreme Court denied certiorari. McFarland then prepared to bring a collateral state proceeding to challenge his conviction. However, he was by any meaning of the word, "unrepresented" by counsel. The trial court refused to stay his execution and concluded that Texas law did not permit the appointment of counsel for state habeas petitions.

The Texas Court of Criminal Appeals affirmed this ruling.

McFarland then commenced an action, pro se, in the federal district court, stating that he wished to file a petition for a writ of habeas corpus. He requested the appointment of counsel and a stay to allow time for that counsel to investigate, prepare, and file his petition. The district court denied the request since McFarland had never filed a petition. The Fifth Circuit affirmed this ruling. On the eve of execution, the Supreme Court granted a stay and a writ of certiorari to determine whether simply filing a motion to appoint counsel was sufficient to invoke a federal court's jurisdiction and therefore, allow it to enter a stay. McFarland was, until almost the very end, unrepresented and appearing completely pro se. It is this fact that provides the fundamental difference between *McFarland* and this case.

Throughout Stanford's direct appeal of his conviction, including the United States Supreme Court's review, the public defender for Jefferson County apparently represented Stanford. Since the adverse decision of the United States Supreme Court on his direct appeal in 1989, the Kentucky Department of Public Advocacy and the Capital Litigation Resource Center have represented Stanford. Unlike in the State of Texas, where there were no means to secure publicly financed counsel from the Texas Capital Resource Center, Kentucky provides counsel to indigent capital defendants not only during the actual trial and the direct appeal but also any post-conviction collateral attacks, including federal habeas corpus. *See* Ky.Rev.Stat. Ann. § 31.220 (1993). Kentucky has provided and continues to provide the very type of preapplication legal assistance and representation that Section 848(q)(4)(B) requires. Therefore, the core concern of *McFarland*, that an uncounseled prisoner would be required to "proceed without counsel in order to obtain counsel and thus would expose him to the substantial risk that his habeas claims never would be heard on the merits" simply does not exist here. *McFarland*, —— U.S. at

---

**3.** While counsel states that one year is not dilatory, we note that is has already been thirteen months since the denial of certiorari.

——, 114 S.Ct. at 2572. Stanford has been, is, and will be represented by publicly financed, undoubtedly qualified, counsel.

Congress designed Section 848 to ensure a *process* for securing counsel for indigent prisoners who sought to challenge their capital convictions by writ of habeas corpus in federal court, and to secure a means for compensating such counsel. 21 U.S.C. § 848(q)(4)(B) provides that:

> In any post conviction proceeding under section 2254 or 2255 of title 28, seeking to vacate or set aside a death sentence, any defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services shall be entitled to the appointment of one or more attorneys and the furnishing of such other services in accordance with paragraphs (5), (6), (7), (8), and (9).

There is certainly nothing either in the language of § 848(q)(4)(B) or in the arguments and debates surrounding it, that gives any indication that Congress meant to extend federal jurisdiction so greatly as to allow federal judges to nullify state proceedings for any period of time, let alone an indefinite period. It would startle Congress to learn that when it passed the section in 1988 it had just completely halted the process of justice for at least a year, and apparently for whatever further period a federal judge chose, without the discipline of a pending habeas proceeding.

In the *McFarland* case, the Supreme Court did rule that Section 848 did slightly expand federal jurisdiction. As expounded at length in *Steffen,* we interpreted that decision to mean that in cases in which a prisoner is truly unrepresented, that is, he has no lawyer looking out for his interests, or willing to file a petition for a writ of habeas corpus on his behalf, a federal judge may stay his execution while a lawyer that the judge contemporaneously appoints is preparing such a petition.

Stanford is correct when he points out that *McFarland* states that "once a capital defendant invokes his right to appointed counsel, a federal court has jurisdiction under § 2251 to enter a stay of execution." *McFarland,* —— U.S. at ——, 114 S.Ct. at 2568. However, *McFarland* did not hold that a federal court has blanket jurisdiction to stay an execution simply because the counsel who has been representing the prisoner (for three years in the *Steffen* case, for five years in this case) believes that he could file a *better* petition for habeas corpus if he had more time (or simply seeks to avoid filing such a petition for tactical purposes). Stanford fails to note that *McFarland* held that "a capital defendant may invoke this right to a counseled federal habeas corpus proceeding by filing a motion requesting the appointment of habeas counsel, and that a district court has jurisdiction to enter a stay of execution *where necessary to give effect to that statutory right.*" *Id.* at ——, 114 S.Ct. at 2574 (emphasis added).

Counsel for the condemned warmly argues that his tactics are not dilatory, that he simply is busy and the case is complex, and he needs more time to file a petition that he considers "adequate." While it is certainly true that each of us involved in the law, and perhaps in any area of human endeavor, could do a better job if given more time, that is not the standard. Even giving full credence to the reasons given by counsel (and the record gives us no reason not to), we note that counsel affirmatively stated at oral argument what is, in any event, obvious; had this court several months ago granted the writ of mandamus (which was fully within our power—the petition has been pending since August 5, 1994), counsel would have already filed a petition that, though he might consider it unsatisfactory, would have properly invoked federal jurisdiction, commenced the habeas process, and, given our knowledge of counsel's abilities, almost certainly strongly advanced the interest of his client. As the Supreme Court has aptly stated, "[a] criminal trial is the "main event" at which a defendant's rights are to be determined, and the Great Writ is an extraordinary remedy that should not be employed to 'relitigate state trials.'" *McFarland,* —— U.S. at ——, 114 S.Ct. at 2574 (quoting *Barefoot v. Estelle,* 463 U.S. 880, 887, 103 S.Ct. 3383, 3392, 77 L.Ed.2d 1090 (1983)).

Therefore, the entry of a stay in this case was clearly erroneous as a matter of law.

Neither the statute nor *McFarland* stand for the proposition that an already well-represented prisoner may invoke the "stay" jurisdiction of a federal court by seeking pre-petition appointment of counsel who already represents him. Stanford's position would allow a prisoner with counsel who has represented him for years, as is the case here, to stop all state proceedings against him indefinitely at the sufferance of a federal judge with no habeas petition pending before him. This stay would not exist, as it normally would, for as long as it takes to decide the merits of the petition. This pre-petition stay survives until either Stanford decides to file his actual petition, or until the district court or this court decides to dissolve the stay, thereby forcing the filing of the habeas petition.

*McFarland* did not countenance such an outcome. In fact such ad hoc decision making in capital cases is exactly what the Supreme Court has been trying to avoid. *See McCleskey v. Zant*, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991); *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). As we stated in *Steffen v. Tate*, 39 F.3d 622, 625 (6th Cir.1994), "[t]here is no indication in the opinion that the Court's reading of the statute applies to the case of a well-counseled prisoner whose counsel, for technically admirable, though dilatory, reasons, wishes to obtain both the security of a stay of execution from a federal court while simultaneously reserving, rather than exercising and thus exhausting, his right to federal court review by petitioning for a writ of habeas corpus."

D. *Whether the district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules.*

This is only the second time this Circuit has been called on to review the scope of *McFarland*. Clearly this is not an oft-repeated error, nor does the district court's decision manifest a persistent disregard for the federal rules. However, "we feel that this guideline is not as crucial to the resolution of the case as are the other guidelines." *In re Bendectin Prods. Liab. Litig.*, 749 F.2d at 306. The Supreme Court has approved the use of a writ of mandamus to review unique and important procedural questions. *Schlagenhauf v. Holder*, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964). *See also In re EEOC*, 709 F.2d 392, 394 (5th Cir.1983) (concluding that the writ can be used as "a one-time only device to settle new and important problems that might have otherwise evaded expeditious review.").

Parts four and five of the *Bendectin* test are to some degree contradictory. If a district court's order "raises new or novel problems" or "issues of first impression" it is unlikely to simultaneously demonstrate a "persistent disregard for the federal rules" or to be an "oft-repeated error." Therefore, part four of the *Bendectin* test functions more as a rule of inclusion than as one of exclusion. Decisions that meet part four are particularly prone to mandamus review. However, those situations, such as here, where no such conduct is attributable to the district court are not automatically excluded. Instead the petitioner must demonstrate that the case presents a compelling problem of first impression. Because "the issues presented in this case are new and very important, as we will discuss in connection with the next guideline, we believe that mandamus can be appropriate even though a recurring problem is not involved." *In re Bendectin Prods. Liab. Litig.*, 749 F.2d at 307.

E. *Whether the district court's order raises new and important problems or issues of law of first impression.*

This is only the second case in this Circuit to examine the issue of granting a stay absent the filing of a habeas petition. *McFarland* opens a new area containing a novel problem. Coming as it does in the area of capital punishment, it is particularly important that the Circuit speak as immediately as possible on the issue. Without passing judgment on the motives of Stanford or his counsel, it is clear that in many circumstances delay is the best strategy for those representing condemned prisoners. As we noted in *Steffen*, "[s]ince there is only one significant bite at the apple of federal habeas, and since that procedure must almost always be completed before an execution can be carried

out, the filing of a habeas petition is a powerful card in the hand of the defendant, but it is a card that can only be played once. Therefore, it is almost always in the interest of a death-sentenced prisoner to delay filing that petition as long as possible." *Steffen*, 39 F.3d at 625.

Unlike in some other Circuits, capital appeals have been relatively rare in this Circuit. Therefore, it is important that this court correct a clear misapplication of the law when the opportunity presents itself. Stanford's reading of *McFarland* would inject an additional, potentially extensive delay into an already sluggish system of habeas review. Furthermore, Stanford would do so without regard to whether the circumstances of the case warranted any delay.[4]

These factors are cumulative and should be balanced; they may not all point to the same conclusion. *In re Bendectin Prods. Liab. Litig.*, 749 F.2d at 304. Furthermore, the absence of any factor is not controlling. *Ibid. See also In re NLO, Inc.*, 5 F.3d at 156. Mindful that mandamus is an extraordinary remedy for the myriad reasons described above, we are nonetheless persuaded that it is appropriate in this case. The district court's ruling is effectively unreviewable on appeal, since it will be moot. The delay harms Kentucky's interest in finality and its right to carry out its criminal laws. These concerns cannot be rectified or cured on appeal.

Furthermore, the stay of execution in this case is clearly erroneous. In short, the interplay of *McFarland*, Section 848(q)(4)(B), and previous Supreme Court jurisprudence, especially *McCleskey*, have established a federal habeas system that is fully capable of working as intended, when operated in good faith.

That process essentially works as follows. After the disposition of state collateral proceedings, the prisoner files a petition for a writ of certiorari with the United States Supreme Court. If and when the Supreme Court denies the certiorari petition, the state expects that a writ of habeas corpus will be filed, and, in our case, permits a certain period of time for the filing and even voluntarily acceded to a request for additional time. Thus, on July 9, 1994, Stanford was in this position:

1. Stanford was represented by counsel financed by the taxpayers of both the state and federal government since 1989, having been represented by the state taxpayers for the preceding seven years since the murder for which he was found guilty.

2. His counsel had specifically agreed to file a petition for a writ of habeas corpus by that date.

3. Approximately eighteen months had passed since the Kentucky Supreme Court had rejected Stanford's appeal of the denial of his post-conviction remedies.

4. Seven months had passed since the United States Supreme Court had denied certiorari, thus clearing the way for Stanford's execution to go forward.

The period between the submission of this case to the Kentucky Supreme Court on November 12, 1992 and the date of this writing has been well over two years, during which time the filing of a writ of habeas corpus should have been a realistic aim of Stanford, had the paramount goal been anything other than delay.[5] Given the realities of petitions for rehearing before the Kentucky Supreme Court and of petitions for certiorari, it was overwhelmingly likely, if the Kentucky Supreme Court denied collateral relief, that a petition for a writ of habeas corpus would be necessary if Stanford's execution was to be avoided.[6]

---

4. Evidence of the extreme reading of *McFarland* offered by Stanford, and of the possibility that he does not find the scenarios described previously to be worrisome, is found in his contention that "a preapplication motion for stay of execution of a death sentence is an ex parte proceeding at which no attorney general or other State officer has standing to appear and voice objection to the stay." Stanford cites no cases or statutes even remotely supporting this proposition.

5. It appears that the last voluntary filing by Stanford in any court, other than the motion to appoint counsel, was the petition for a writ of certiorari in the United States Supreme Court. This was filed approximately 18 months ago.

6. For the 1993 term the Supreme Court docketed 275 certiorari petitions from judgments of state supreme courts in capital cases. The Supreme Court granted certiorari in seven of these cases.

There is nothing in the statute or in *McFarland* that countenances this additional delay. Even though counsel earnestly contends that the stricture in *McCleskey* that, under most circumstances, only one habeas corpus petition may be filed, constrains him to near perfection in that filing, there is nothing in *McCleskey,* in *McFarland,* or in the statute, that indicates that federal courts may intervene to prevent execution for an indefinite period to assist in that effort.

What can best be called a *"McFarland* stay" is not available for every death row prisoner, but only for those in McFarland's circumstances. The narrow window opened by *McFarland* and interpreted in *Steffen* certainly does not include the situation before us. Finally, while this is not yet an often-repeated error, in this context, and particularly in this Circuit, the court should take the opportunity to speak immediately, particularly in an area of the law where delay is a customary problem.

All these factors militate in favor of granting the petition and issuing the writ with respect to the stay. The district court was without jurisdiction to grant the stay, and a writ of mandamus is appropriate under these circumstances to correct that action. Therefore, under the authority of the "All Writs Statute," 28 U.S.C. § 1651, we will grant, in part, the petition for a writ of mandamus. The district court is directed to vacate the stay of execution, purportedly entered pursuant to 28 U.S.C. § 2251.

## IV

For these reasons, the petition for writ of mandamus is **GRANTED** in part. The district court is directed to vacate the stay of execution. That portion of the petition which seeks the revocation of the order appointing counsel is **DENIED.**