**Gary Bradford CONE, Petitioner,**

v.

**Ricky BELL, Warden, Respondent.**

No. 97–03–M1/A.

United States District Court,
W.D. Tennessee,
Western Division.

March 7, 1997.

Restatement (Second) of Torts § 442A (1964).

Robert Hutton, Memphis, TN, Paul Bottei, Asst. Fed. Public Defender for the Middle Dist. of Tenn., Nashville, TN, Howard Cleveland, Memphis, TN, Stephen Glassroth, Montgomery, AL, for petitioner.

John Baker, Asst. Atty. Gen., Nashville, TN.

## ORDER SETTING SCHEDULE

McCALLA, District Judge.

On January 27, 1997, petitioner filed an Application For Appointment of Counsel to Investigate, Prepare, and File Petition for Writ of Habeas Corpus in Capital Case and a Motion for Stay of Execution in the United States District Court for the Middle District of Tennessee. By Order dated January 27, 1997, Judge Campbell of Middle District of Tennessee granted petitioner's motion for appointment of counsel and issued a stay of execution under 28 U.S.C. § 2251. That same day, Judge Campbell transferred this case to the Western District of Tennessee pursuant to 28 U.S.C. § 2241(d).

On March 6, 1997, a scheduling conference was held in this matter. Present at the conference were: Mr. Cone, petitioner; Robert Hutton, counsel for petitioner; Paul Bottei, Assistant Federal Public Defender for the Middle District of Tennessee and counsel for petitioner; Howard Cleveland, counsel for petitioner; and John Baker, Assistant Attorney General for the State of Tennessee. In addition, to Mr. Hutton, Mr. Bottei, and Mr. Cleveland, petitioner is also represented by Mr. Stephen Glassroth. Mr. Glassroth's role, however, will be limited to providing transition assistance to Mr. Hutton and Mr. Bottei, who are co-counsel in this matter.

At the conference, the Court questioned Mr. Hutton, Mr. Bottei, and Mr. Cone about a possible conflict of interest between Mr. Cone and Mr. Hutton's law firm as a result of the fact that former District Attorney General John Pierotti has recently joined Mr. Hutton's firm as a member. Mr. Hutton informed the Court that he has spoken with General Pierotti, who has assured Mr. Hutton that he had nothing to do with the prosecution, appeals, or post-conviction proceedings involving Mr. Cone. In addition, Mr. Hutton and Mr. Bottei informed the Court that they have spoken with Mr. Cone regarding the possible conflict of interest and that Mr. Cone has waived any possible conflict and accepts Mr. Hutton and his law firm as counsel in this matter. The Court then questioned Mr. Cone about the possible conflict and whether he accepted Mr. Hutton and his law firm as counsel in this matter; Mr. Cone indicated that he would accept Mr. Hutton as his lawyer. In order to prevent any question of impropriety, however, the Court ORDERS Mr. Hutton and all those in his law firm working on this case not to discuss the case or any matter related to this case with General Pierotti. Likewise, the Court hereby ORDERS General Pierotti not to discuss this case or any matter related to this case with anyone in his law firm until this matter is resolved.

Pursuant to that conference, the Court hereby SETS the following schedule in this case:

1. Petitioner is ORDERED to file a petition for a writ of habeas corpus by 5:00 p.m. on July 1, 1997.

2. The stay of execution entered by Judge Campbell is hereby EXTENDED until 5:00 p.m. on July 1, 1997, at which point the stay of execution will automatically expire; provided, however, that the stay will automatically be extended pending resolution of any petition filed by petitioner before 5:00 p.m. on July 1, 1997.

3. Failure to file such a petition before 5:00 p.m. on July 1, 1997, however, will preclude the entry of any future stay of execution and will result in immediate dismissal with prejudice under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute and for failure to comply with a court order.

4. In the event that petitioner files a petition, the state will have 30 days to respond to the petition.

5. Finally, this matter is set for a follow-up conference on May 12, 1997, at 1:30 p.m.

## DISCUSSION

In reviewing any federal habeas petition, a court must carefully balance the prisoner's interest in obtaining relief with both the state's interests in finality and enforcing its judgments. *McCleskey v. Zant,* 499 U.S. 467, 491, 111 S.Ct. 1454, 1468–69, 113 L.Ed.2d 517 (1991) ("Reexamination of state convictions on federal habeas 'frustrate[s] both the state's sovereign power to punish offenders and their good faith effort to honor

constitutional rights.'"), and the public's interest in prompt resolution of the federal habeas proceedings, *Spann v. Martin,* 963 F.2d 663, 673 (4th Cir.1992) (holding that the public "has a vital interest in the fair and prompt conclusion of habeas corpus petitions in federal courts, particularly when they involve a serious crime prosecuted by one of the states"), *quoted in In re Parker,* 49 F.3d 204, 207 (6th Cir.1995). The calculus of the above balancing process, however, differs dramatically depending on whether the court is reviewing a capital or non-capital petition.

In non-capital habeas petitions, the state's interests in finality and enforcing its judgments are not frustrated by the mere filing of a habeas petition. In such cases, the petitioner almost always remains incarcerated throughout the duration of the habeas proceeding, thereby serving the state imposed sentence. Thus, the interests of the parties are not diametrically opposed at the instant of filing, because the state is able to enforce its judgment while the prisoner is pursuing his habeas petition.

In contrast, in capital habeas petitions, the state's interests in finality and in enforcing its judgments are often frustrated, at best temporarily and at worst indefinitely, by the mere filing of a habeas petition because of the stay provision of 28 U.S.C. § 2251.[1] Indeed, in many, if not all, capital habeas cases, the district court is faced with the distinct possibility that the petitioner's sole objective in filing a petition is to obtain a stay, thereby delaying his execution. *Steffen v. Tate,* 39 F.3d 622, 625 (6th Cir.1994) (noting that "it is almost always in the interest of a death-sentenced prisoner to delay filing that petition as long as possible"). Nonetheless, in *Lonchar v. Thomas,* —— U.S. ——, 116 S.Ct. 1293, 134 L.Ed.2d 440 (1996), the Supreme Court held that a district court must enter a stay of execution if it "cannot dismiss the petition on the merits before the scheduled execution" in order "to prevent the case from becoming moot." *Id.* at ——, 116 S.Ct. at 1297. Moreover, the Court held that

a petitioner's motivation in filing the petition at the last moment is irrelevant to the decision to grant the stay. *Id.* at ——, 116 S.Ct. at 1302. Thus, the Supreme Court implicitly found that a petitioner's interest in obtaining review of his first habeas petition and avoiding execution pending resolution of that petition outweighs the state's interests in finality and enforcing its judgment at that particular moment. In such cases, the actual delay should be minimal, however, because it will only last as long as the district court takes to decide the case on the merits.

A more difficult problem and a greater potential for abuse arise when a stay is entered upon the filing of a request for counsel. In *McFarland v. Scott,* the Supreme Court held that a prisoner facing the death penalty can obtain a stay of execution under § 2251 upon the filing of a request for counsel. 512 U.S. 849, 114 S.Ct. 2568, 129 L.Ed.2d 666 (1994). Unlike *Lonchar,* however, the Court in *McFarland* did not find that a district court must enter a stay upon a request for counsel. Indeed, the Court stated:

> This conclusion by no means grants capital defendants a right to an automatic stay of execution. Section 2251 does not mandate the entry of a stay, but dedicates the exercise of stay jurisdiction to the sound discretion of a federal court. Under ordinary circumstances, a capital defendant presumably will have sufficient time to request the appointment of counsel and file a formal habeas petition prior to his scheduled execution.

512 U.S. at 857–58, 114 S.Ct. at 2573. Nonetheless, the Court clearly contemplated that a stay would be entered if the denial of a stay would effectively deny petitioner his right to counsel:

> But the right to counsel necessarily includes a right for that counsel meaningfully to research and present a defendant's habeas claims. Where this opportunity is not afforded, "[a]pproving the execution of a defendant before his [petition] is decided

---

1. Section 2251 provides, in relevant part:

   A justice or judge of the United States before whom a habeas corpus proceeding is pending, may, before final judgment or after final judgment of discharge, or pending appeal, stay any

   proceeding against the person detained in any State court or by or under the authority of any State for any matter involved in the habeas corpus proceeding.

on the merits would be clearly improper." *Barefoot* [*v. Estelle,* 463 U.S. 880, 889, 103 S.Ct. 3383, 3392, 77 L.Ed.2d 1090 (1983) ]. On the other hand, if a dilatory capital defendant inexcusably ignores this opportunity and flouts the available processes, a federal court presumably would not abuse its discretion in denying a stay of execution.

512 U.S. at 858, 114 S.Ct. at 2573.

■ Moreover, the Court's more recent decision in *Lonchar* suggests that a stay should be entered, even if the petitioner makes a request for counsel at the last minute, if such a stay is necessary to give effect to the appointment of counsel under 21 U.S.C. § 848(q). In *Lonchar,* the Court held that "the fact that Lonchar filed his petition at the 'eleventh hour' does not lead to a different conclusion." —— U.S. at ——, 116 S.Ct. at 1301. The Court reasoned that, in a first habeas petition, the timing of the petition does not affect the granting of a stay, because the interest in permitting federal habeas review of a first petition outweighs the state's interests in finality and enforcement pending resolution of the petition by the district court. *Id.* at ——, 116 S.Ct. at 1299. By similar logic, the filing of a request for counsel under § 848(q) should result in the imposition of a stay in a first federal habeas petition, irrespective of when the request is made, if such a stay is necessary to give effect to the right to counsel and the filing of the habeas petition. Under such circumstances, as in *Lonchar,* the interests of obtaining federal habeas review should outweigh the state's interests in finality and enforcement. As discussed below, however, this does not mean that the petitioner is entitled to an indefinite stay of execution. Instead, this conclusion places a burden on the district court to manage the case in order to balance the competing interests of the state and the petitioner.

■ Applying these standards to the present case, it is clear that petitioner's execution was properly stayed. Here, petitioner filed his request for counsel and motion for a stay on January 27, 1997, a little more than one month before his scheduled execution date of March 3, 1997. Because of the time con-

straints, a stay was necessary in order to give meaning to petitioner's right to counsel and allow federal review of his habeas petition.

In reaching this conclusion, this Court is mindful of the Sixth Circuit opinion in *In re Parker,* 49 F.3d 204 (6th Cir.1995), decided almost one year prior to *Lonchar.* In *Parker,* the petitioner moved the court for appointment of counsel and a stay of execution. The motions were signed by the attorney who represented the petitioner throughout his state post-conviction proceedings, Mr. J. Vincent Aprile II of the Kentucky Department of Public Advocacy, and sought appointment of Mr. Aprile as the federal habeas counsel. The district court appointed Mr. Aprile as counsel and granted petitioner's motion for a stay of execution. Upon application, the Sixth Circuit then issued a writ of mandamus vacating the stay, finding that "neither [§ 848(q) ] nor *McFarland* stand for the proposition that an already well-represented prisoner may invoke the 'stay' jurisdiction of a federal court by seeking pre-petition appointment of counsel who already represents him." 49 F.3d at 211. Although this would appear to suggest that a habeas petitioner is not entitled to a stay if the same counsel that represented him in the state proceeding is also going to represent him in the federal habeas petition, such a broad reading is not warranted.

■ As noted above, the Court finds that the Supreme Court's decision in *Lonchar,* when read in connection with *McFarland,* requires that a district court enter a stay of execution in a capital habeas case upon the request for counsel if the denial of that stay would result in the effective denial of the right to counsel under § 848 because of the impending execution date. Under such circumstances, the denial of a stay would either prevent counsel from filing a habeas petition at all or require that he file an inadequate petition in order to meet the impending deadline. Thus, to the extent that *Parker* suggests that a stay can never be entered if a petitioner requests appointment of the same counsel under § 848 that represented him in the previous state proceedings, the Court

finds that such a holding is undermined by *Lonchar* and *McFarland*.[2]

■ Even if *Parker* survives intact after *Lonchar* and should be read that broadly, *Parker* is not controlling to the facts of this case. Significantly, petitioner's prior counsel is not being appointed in this case to the same extent that counsel was appointed in *Parker*. In his motion for appointment of counsel, petitioner did not request the same counsel who represented him in his latest state proceedings; instead, petitioner sought the appointment of a federal public defender. In contrast, the petitioner in *Parker* sought the appointment of the same exact counsel that had represented him throughout his state proceedings. Moreover, petitioner's most recent counsel, Mr. Stephen Glassroth, has specifically requested that he not be appointed as petitioner's lead counsel because of other obligations. Although the Court has appointed Mr. Glassroth as counsel, it has done so in a limited role and only to facilitate the smooth transition of counsel. Even given its most broad reading, *Parker* does not stand for the proposition that a petitioner is not entitled to a stay of execution if his previous counsel is involved in any capacity in the case.

In addition, this case does not involve the same egregious delay that the Sixth Circuit confronted in *Parker*. In *Parker*, by the time the court issued its writ of mandamus, over eight months had passed since the district court entered the stay of execution, and the petitioner still had not filed a habeas petition. 49 F.3d at 206. In contrast, in this case, petitioner filed his request for counsel

and motion for stay on January 27, 1997. Nothing in *Parker* suggests that under these facts, the Court has erroneously entered a stay of execution under the terms of this Order.

Nonetheless, the Court finds the rationale of *Parker* instructive in determining how to manage a capital habeas case initiated by a petitioner's request for counsel. Indeed, the Court finds that *Parker* is better viewed as a criticism of the district court in its handling of the case. As noted above, in *Parker*, over eight months had passed since the entry of the stay, and the petitioner still had not filed his habeas petition. As the court noted in *Parker*, when a district court enters a stay, the stay "should not be unlimited, or *of a duration controlled by the prisoner*. Instead, '[i]n a capital case the grant of a stay of execution directed to a state by a federal court imposes on that court the concomitant duty to take all steps necessary to ensure a prompt resolution of the matter, consistent with its duty to give full and fair consideration to all of the issues presented in the case.'" *Parker*, 49 F.3d at 208 (quoting *In re Blodgett*, 502 U.S. 236, 240, 112 S.Ct. 674, 676–77, 116 L.Ed.2d 669 (1992)) (emphasis added). Thus, the question becomes one of determining the proper method of managing a capital habeas case initiated by a request for counsel in order to adequately protect the interests of all parties.

The first solution is suggested by *Parker* itself—the district court could impose the stay and then monitor the case for abuse. *See Parker*, 49 F.3d at 211 ("This pre-petition stay survives until either [the prisoner]

---

2. In addition, the Court notes that application of *Parker* to all capital habeas cases would result in the exact result that the *Parker* court was trying to avoid, i.e., the unnecessary and inefficient delay in the resolution of capital habeas petitions. If such a rule were broadly applied, it would provide petitioners, who do not have a meritorious claim and are seeking delay only, with an incentive to fire the counsel who last represented them at the conclusion of the state post-conviction proceedings, in order to obtain a stay under § 2251. Indeed, common sense would lead to this exact result. In such a case, counsel, who may have represented the prisoner throughout the state court proceedings and undoubtedly knows more about the case than anyone else, is fired in order to obtain more delay.

In most cases, such a result is contrary to the interests of all parties involved—the petitioner, who must rely on new counsel to learn all of the material, the state, which must wait even longer to impose its judgment, and the district court, which is without the benefit of the most appropriate counsel. Of course, in some cases, because of disagreement between the petitioner and his counsel, or because of circumstances beyond anyone's control, the petitioner may indeed need new counsel. In such cases, some delay is inevitable. In cases where the continuation of counsel is in everyone's interests, however, the court should not construct a rule that, when rationally reacted to by petitioners, results in unnecessary and avoidable delay.

decides to file his actual petition, or until the district court or this court decides to dissolve the stay, thereby forcing the filing of the habeas petition."). As the *Parker* court suggests, however, this result is not wholly satisfactory. Presumably, the court would lift the stay once it concluded that the petitioner was abusing the stay and merely seeking to delay his execution. Thus, the lifting of the stay itself is predicated on unnecessary and improper delay by the petitioner. In addition, although the lifting of the stay would undoubtedly prompt the petitioner to file a petition, the petitioner would not have to file his petition immediately. Before the petitioner would realistically have to file his petition, the state would first have to reset the execution date, presumably at a minimum of a few weeks in the future. Until such a date is set, the prisoner has no incentive to file his petition. Even once the date is set, the petitioner still would not have to file his habeas petition until moments before his scheduled execution, because, under a literal interpretation of *Lonchar*, the district court must enter a stay of execution for first time habeas petitions if it cannot dismiss the petition under Rule 4 of the Rules Governing § 2254 Cases in the District Courts.[3] Once the stay is entered, of course, the petitioner has gained another delay, this time one lasting as long as it takes the district court to decide the case. Thus, under such a rule, the

ability to determine the length of the stay is once again left in the hands of the prisoner— a result condemned by the court in *Parker*. The ability of a petitioner to frustrate the state's interests in finality and enforcing its judgment through procedural gamesmanship indicates that additional protections are necessary to properly manage a capital habeas case initiated by a request for counsel.

■ This suggests that a Court should impose a deadline for filing a habeas petition once counsel is appointed and a stay entered. The imposition of fixed deadlines for filing once counsel is appointed, however, would also be insufficient to prevent abuse. For example, even if the district court orders that the stay of execution will automatically expire at the end of 90 days if a habeas petition is not filed, a petitioner still would have no incentive to meet that deadline. As discussed above, in such a case, the state would first need to set another date for execution. Once set, the petitioner could then wait until moments before the execution to file his habeas petition, the filing of which invokes a stay of execution under *Lonchar*. Thus, the petitioner would actually have 90 days plus whatever amount of time it takes the state to reset the execution to file his habeas petition. While such a situation is preferable to the situation discussed above, it still leaves the length of the stay within the control of the petitioner, albeit to a lesser degree.

3. Of course, a court could immediately dismiss the petition filed under these circumstances if it felt that the petitioner's failure to file his petition until the last minute resulted in prejudice to the state. *Lonchar*, —— U.S. ——, 116 S.Ct. 1293 (holding that federal courts can only consider Rule 9 in deciding whether to dismiss a habeas petition for delay in filing); Rule 9 of the Rules Governing § 2254 Cases in the District Courts (stating that a court can dismiss a habeas petition when "it appears that the state ... has been prejudiced in its ability to respond ... by delay in its filing."). Unlike non-capital habeas petitions, however, petitioner's delay in filing, even if intentional, will rarely, if ever, result in sufficient prejudice to the state to justify dismissal under Rule 9. In fact, any delay is almost always going to be, at least in part, a result of state action. For example, the delay may result from the state's failure to set a date for execution. In such a case, the prisoner has no incentive to file a federal habeas petition until such a date is set. Under such circumstances, it would be difficult to see how the prisoner could be held responsible for any prejudice arising from the delay in filing.

Indeed, the state has the ability to force the filing of the federal habeas petition merely by setting the date of execution.

Likewise, any delay resulting from a petitioner's pursuit of state post-conviction proceedings cannot be attributed to the petitioner in most circumstances—a petitioner cannot be penalized for pursuing his state created legal means of redress. Moreover, even in this example, where the petitioner waits until the eve of his execution to file his petition, it is highly unlikely that this will result in sufficient prejudice to the State to warrant dismissal under Rule 9. As above, once the stay is lifted for failure to file a petition, the state can force the filing by setting a date for execution. In most cases, this will be a time period short enough that the State cannot legitimately argue that it was prejudiced by the delay. Any significant delay between the lifting of the stay and the date of execution would arise from the state's failure, for whatever reason, to set a date for execution—once again, a failure not attributable to the petitioner.

Consequently, the Court finds that a few additional safeguards and incentives are necessary to properly balance all of the competing rights and interests. First, in addition to setting a date certain for filing a petition, a district court should also provide that the stay will automatically expire if a petition is not timely filed; provided, however, that the stay will be extended if a petition is filed on or before the date certain and shall remain in effect until the petition is resolved. In addition, the court should warn the petitioner that the stay will not be reinstated and that the case will be dismissed with prejudice under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute and for failure to comply with a court order [4] if the petitioner fails to meet the court imposed deadline.

Although a literal interpretation of *Lonchar* would preclude a court from denying a stay in the event that a petition is filed after the expiration of the court imposed deadline and before the scheduled execution in a petitioner's first habeas petition, the Court finds that *Lonchar* would not control these facts. In *Lonchar*, the petitioner filed his petition for habeas corpus on the eve of his scheduled execution. Unlike Mr. Cone, the petitioner in *Lonchar* did not file a previous request for counsel under 21 U.S.C. § 848(q). Thus, Mr. Lonchar did not initiate his habeas proceeding until he filed the petition itself. In contrast, when a prisoner files a request for counsel, he thereby initiates, for all intents and purposes, the habeas proceeding, even though an actual petition is not filed. Thus, unlike the petitioner in *Lonchar*, the petitioner who initiates the habeas case by requesting the appointment of counsel would not be denied the opportunity to file a petition. On the contrary, under these rules, the petitioner is given every opportunity to file a petition, including the appointment of counsel. The failure of the petitioner to file a petition under these circumstances (i.e., the failure to follow a clear and readily comprehensible order of court and advance warning of the consequences for such failure) does not warrant the automatic imposition of a stay as in *Lonchar*.

In so holding, the Court is mindful of the fact that this merely alters the timetable for a prisoner's filing of a request for counsel. Under the rule adopted here, the prisoner will delay filing his request for counsel until the eve of his execution. At that point, the rules set forth herein will then be relevant. This result, however, is preferable to the current situation. Most significantly, these rules properly balance and protect the competing interests of the state and prisoner. They protect the interests of the state by setting a concrete procedure for reviewing federal capital habeas petitions. This will allow a state to restructure, if it so desires, its current schedule for executions to take into account the imposition of the stay. Thus, a state could either shorten the time

4. A district court has the authority to dismiss a case sua sponte under Rule 41(b) for failure to prosecute or comply with a court order. *Link v. Wabash R.R.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *Consolidation Coal Co. v. Gooding*, 703 F.2d 230 (6th Cir.1983). Although dismissal under Rule 41(b) is disfavored and should only be used in extreme circumstances, *Gooding*, 703 F.2d at 233 (holding that a dismissal with prejudice under Rule 41(b) is warranted only when a "clear record of delay or contumacious conduct by the plaintiff exists ... and a lesser sanction would not better serve the interests of justice") (internal quotations and citations omitted), the Court finds that dismissal under Rule 41(b) would be appropriate in a capital habeas case where the petitioner has failed to meet a court imposed deadline. As discussed above, although a prisoner has a right to file a habeas petition, he does not have a right to delay the execution by engaging in procedural gamesmanship. If the petitioner did, in fact, fail to file a petition in conformance with a clear and readily comprehensible court order, the Court finds that such disregard would constitute a "clear record of delay and contumacious conduct." *Gooding*, 703 F.2d at 233. Furthermore, the Court finds that "a lesser sanction would not better serve the interests of justice." *Id.* In fact, as set forth above, if the Court were to allow the petitioner to flout established deadlines in order to obtain additional delay, the interests of justice would be seriously undermined. Finally, by giving petitioner notice now that his case will be dismissed with prejudice if he fails to timely file a petition, the Court has clearly and unambiguously informed petitioner of the consequences of any unwarranted delay. *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir.1991) (holding that dismissal is appropriate when a party fails to comply with readily comprehensible instructions in court order); *Harris v. Callwood*, 844 F.2d 1254, 1256 (6th Cir.1988).

periods allowed for filing post-conviction challenges in order to account for the attendant delays or maintain the current timetables. In either case, the decision is left in the appropriate place—with the state—and not with a federal judge, who, for whatever reasons, allows a prisoner to delay repeatedly the state imposed sentence by taking advantage of procedural rules.

At the same time, these rules protect the prisoner by giving him every opportunity to file a federal habeas petition with the assistance of counsel. In addition, by allowing a stay to be entered in a first habeas petition upon a request for counsel, the petitioner is protected from the state proceeding too quickly in setting the execution, thereby mooting his rights to counsel and ability to file a habeas petition. Instead, by entering a stay, plaintiff is given sufficient opportunity to obtain federal habeas review of his state conviction.

### CONCLUSION

For the reasons set forth above, the Court hereby SETS the following schedule in this case:

1. Petitioner is ORDERED to file a petition for a writ of habeas corpus by 5:00 p.m. on July 1, 1997.

2. The stay of execution entered by Judge Campbell is hereby EXTENDED until 5:00 p.m. on July 1, 1997, at which point the stay of execution will automatically expire; provided, however, that the stay will automatically be extended pending resolution of any petition filed by petitioner before 5:00 p.m. on July 1, 1997.

3. Failure to file such a petition before 5:00 p.m. on July 1, 1997, however, will preclude the entry of any future stay of execution and will result in the immediate dismissal with prejudice of petitioner's case under Rule 41(b) of the Federal Rules of Civil Procedure.

4. In the event that petitioner files a petition, the state will have 30 days to respond to the petition.

5. Finally, this matter is set for a follow-up conference on May 12, 1997, at 1:30 p.m.